IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FRIENDSHIP HOME HEALTHCARE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:09-CV-00016 |
| PROCURA, LLC, | ) ) | Senior Judge Nixon Magistrate Judge Griffin |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF FRIENDSHIP HOME HEALTHCARE, INC.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Friendship Home Healthcare, Inc. ("Plaintiff") respectfully submits this Memorandum in support of its Response to Defendant's Motion to Dismiss.

## STATEMENT OF FACTS

1. In 2007, 3M Company ("3M") made several visits to Plaintiff's office in Nashville, Tennessee to deliver a sales presentation regarding home healthcare software developed by 3M. [Affidavit of John Plantinga ¶ 3, attached hereto as Exhibit A.]

2. On or about May 12, 2007, Plaintiff entered into a Software License Agreement (the "Agreement") with 3M for the installation of certain home healthcare software (the "Software") at Plaintiff's facilities in Nashville, McMinnville, and LaFayette, Tennessee. [Plantinga Aff. ¶ 4.]

3. 3M made several visits to Plaintiff's Nashville facility. [Plantinga Aff. ¶ 5.]

4. Sometime after July 12, 2007, 3M unilaterally and without Plaintiff's consent assigned its rights in the Agreement to Procura, LLC ("Defendant"). [Complaint ¶ 5; Plantinga Aff. ¶ 6.]

5. On or about December 17, 2007, Plaintiff and Defendant executed a First Amendment to the Agreement. [*See* Complaint Exh. B.]

6. Defendant made several visits to Plaintiff's Nashville facility but was unable to get the Software to work properly. [Plantinga Aff. ¶ 7.]

7. At no time did any representative of Plaintiff travel outside the State of Tennessee in connection with the purchase or installation of the Software. [Plantinga Aff. ¶ 8.]

8. Friendship dealt primarily with three representatives of 3M and Procura, all of whom visited Nashville. Kathy Pruitt was based in Illinois, Forsythia Keller was based in Arizona, and Craig Bass was based in Utah. [Plantinga Aff. ¶ 9.]

9. The Agreement contains a choice-of-law clause selecting Utah law as the law governing the Agreement and a forum selection clause selecting Utah state and federal courts as the venue for litigation arising from the Agreement. [Defendant's Motion to Dismiss Exh. A.]

10. The Agreement provides that the parties shall attempt in good faith to resolve any controversy, claim or dispute arising out of the making or performance or otherwise relating to the Agreement, and that any dispute not resolved within 30 days after written notice thereof shall be submitted to mediation. [Defendant's Motion to Dismiss Exh. A.]

11. The Agreement is a form contract drafted by 3M. [*See generally* Complaint Exh. A.]

12. 3M is a Delaware corporation with principal executive offices in St. Paul, Minnesota. [Page 1 of 3M's Form 10-K for fiscal year 2007, attached hereto as Exhibit B.]

13. Defendant is a Michigan limited liability company. [Articles of Organization of Procura, LLC, attached hereto as Exhibit C.]

14. Plaintiff attempted to informally resolve the dispute regarding the Software by, among other things, purchasing additional computer hardware at a cost of $30,085.96. When this proved unsuccessful, Plaintiff proposed returning the Software to 3M in exchange for a refund of the purchase price. [Complaint ¶¶ 10, 12.]

## ARGUMENT

### I. DEFENDANT SHOULD NOT BE PERMITTED TO ENFORCE THE AGREEMENT'S CHOICE-OF-LAW PROVISION BECAUSE DEFENDANT IS NOT A PARTY TO THE AGREEMENT AND UTAH LAW HAS NO SUBSTANTIAL RELATIONSHIP TO THIS TRANSACTION.

#### A. Defendant Is Not a Party to the Agreement Signed By Plaintiff.

It would be fundamentally unfair to permit Defendant, which is not a party to the Agreement between Plaintiff and 3M, to enforce the Agreement's choice-of-law provision. Plaintiff agreed only that all disputes between itself and 3M would be governed by Utah law. 3M unilaterally and without Plaintiff's consent assigned its rights in the Agreement to Defendant. Plaintiff never consented to the application of Utah law to disputes between itself and Defendant.

In a factually similar situation, the Tennessee Court of Appeals held that a contractual choice-of-law provision governs only those disputes between parties to the contract. In *Messer Griesheim Indus. Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 473 (Tenn. Ct. App. 2003), a purchaser and seller of liquid carbon dioxide entered into supply agreements containing a choice-of-law provision that selected Pennsylvania law. The purchaser discovered that the carbon dioxide was contaminated and filed suit against the seller and the seller's supplier in Knox County, Tennessee Circuit Court alleging, among other things, that the supplier was liable

Case 3:09-cv-00016 Document 12 Filed 02/27/09 Page 3 of 9 PageID #: 200

under a breach of warranty theory. *Messer Griesheim*, 131 S.W.3d at 460-461. The supplier moved to dismiss the purchaser's breach of warranty claim, and the trial court applied Tennessee law and granted the motion. *Id*. at 462.

On appeal, the purchaser argued that because Pennsylvania law governed the supply agreements between itself and the seller, Pennsylvania law should also govern its warranty claims against the supplier. *Messer Griesheim*, 131 S.W.3d at 473. The Tennessee Court of Appeals rejected this argument, holding that because the supplier was not a party to the agreements between the purchaser and the seller, "the described choice of law provision does not merit a finding that Pennsylvania law governs [the purchaser's] warranty actions against [the supplier]." *Id*. at 474. The purchaser also contended that Pennsylvania law should apply because it and the seller were headquartered in Pennsylvania and the agreement between the seller and supplier was executed in Pennsylvania. *Id*. The Court disagreed that such factors mandated the application of Pennsylvania law. *Id*.

Similarly, the choice-of-law provision in the Agreement between Plaintiff and 3M should not govern this dispute between Plaintiff and Defendant. Plaintiff did not contract for such a provision with the Defendant; 3M merely assigned its rights in the Agreement to the Defendant without Plaintiff's prior consent. Defendant's argument for application of Utah law is even weaker than the purchaser's argument in *Messer Griesheim*, because neither of the original parties to the Agreement are headquartered in Utah. 3M is a Delaware corporation with principal executive offices in St. Paul, Minnesota. Plaintiff is a Tennessee corporation with principal executive offices in Nashville, Tennessee. This Court should hold that the choice-of-law provision applies only to disputes arising between the Plaintiff and 3M.

**B.    Utah Law Should Not Apply to the Agreement Because It Bears No Material Connection to the Agreement.**

4

Even if this Court finds that the Defendant may enforce the choice-of-law provision to the same extent as 3M, the Court should refuse to apply Utah law to this dispute. "A federal court whose jurisdiction is based on diversity of citizenship must apply the conflict of law rules of the forum state." *Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). Therefore, in determining whether to honor the choice-of-law provision, Tennessee's conflict of laws rules apply. Tennessee courts will honor a contractual choice-of-law provision if it was executed in good faith, the chosen jurisdiction bears a material connection to the transaction, the basis for the choice of jurisdiction is reasonable and not a sham, and the choice of jurisdiction is not contrary to the fundamental policy of a state having a materially greater interest and whose law would otherwise govern. *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 n.8 (6th Cir. 2006); see also *Goodwin Bros. Leasing, Inc. v. H & B Inc.*, 597 S.W.2d 303, 307 (Tenn. 1980) (parties' choice of law will be upheld unless chosen jurisdiction has "no substantial relationship" to them or the transaction and there is "no other reasonable basis" for their choice, or application of foreign law would contravene a "fundamental policy" of a state having a "materially greater interest.").

Utah law bears no material connection to the Agreement. The Software was purchased from a Minnesota corporation by a Tennessee corporation for installation in Tennessee. Although 3M does have an office in Utah, Plaintiff does not and does not transact business there. No representative of Plaintiff visited Utah in connection with the making or performance of the Agreement. Utah law is not substantially related to the Agreement and there is no other reasonable basis to apply Utah law. In the absence of the choice-of-law provision, Tennessee law should govern the Agreement because the contract was executed by the Plaintiff in Tennessee. *Southeast Texas Inns*, 462 F.3d at 672 n.8 ("Tennessee adheres to the rule of *lex loci*

5

*contractus* – 'a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'"); *see* Complaint Exh. A.

## II. THE FORUM SELECTION CLAUSE SHOULD NOT BE ENFORCED BECAUSE TO DO SO WOULD BE UNREASONABLE AND UNJUST.

It would be unreasonable and unjust to enforce the forum selection clause against the Plaintiff. In Tennessee, forum selection clauses are *prima facie* valid and should be enforced unless the party opposing enforcement can clearly show that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. *Carefree Vacations Inc. v. Brunner*, 615 F.Supp. 211, 213 (W.D.Tenn. 1985). In analyzing the reasonableness of a forum selection clause, Tennessee courts consider (1) which state law governs the contract; (2) the residence of the parties and witnesses; (3) the place of execution and/or performance of the contract; (4) public policy; (5) the availability of remedies in the selected forum; and (6) inconvenience or injustice. *Carefree Vacations*, 615 F.Supp. at 214.

The foregoing factors mitigate against the enforceability of the Agreement's forum selection clause. Because the choice-of-law provision is inapplicable to this dispute, Tennessee law governs the Agreement. The Plaintiff is a resident of Tennessee, as are the witnesses who observed the unsuccessful installation of the Software. The Agreement was executed and to be performed in Tennessee. Finally, and most importantly, it would be fundamentally unjust to permit Defendant, the party who breached the Agreement, to force Plaintiff to seek relief in such an inconvenient forum. For these reasons, the forum selection clause should not be enforced.

## III. THE COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO SEEK MEDIATION.

The Agreement provides that,

> "[t]he *parties* shall attempt in good faith to resolve any controversy, claim or dispute (cumulatively "Dispute") arising out of the making or performance or

6

> otherwise relating to this AGREEMENT. Any Dispute not resolved within thirty (30) days of written notice of the Dispute shall undergo mediation in accordance with the Center for Public Resources Model Procedures using a mediator having a background in the industry and subject matter of the Dispute…."

Agreement ¶ 14.9 (italics added).

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), expresses a strong public policy favoring arbitration of a wide class of disputes. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005). The FAA provides that written arbitration agreements are valid, irrevocable, and enforceable except upon grounds as exist for the revocation of any contract. *Walker*, 400 F.3d at 377. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)).

The only parties to the Agreement are Plaintiff and 3M, and Plaintiff agreed only to submit to mediation any claims arising between itself and 3M. As previously stated, Plaintiff did not consent to 3M's assignment of the Agreement to Defendant, and did not enter a separate agreement to submit to mediation any disputes with the Defendant. The Defendant should not be permitted to enforce a mediation clause to which it is not a party.

Moreover, formal mediation of this matter would be futile because Plaintiff and Defendant have for months unsuccessfully attempted to resolve their dispute informally. Despite repeated installation attempts by 3M and the Defendant, and the purchase by Plaintiff of over $30,000 worth of additional computer hardware, the Software has never worked properly and Plaintiff has never received the benefit of its bargain. Any resolution of this matter short of a full refund of the purchase price for the Software and the additional computer hardware would be

unsatisfactory to Plaintiff. Formal mediation or alternative dispute resolution is unlikely to be fruitful.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

**NEAL & HARWELL, PLC**


By: _/s/ James R. Kelley_____

James R. Kelley (BPR #5525)
Stephen M. Montgomery (BPR #26489)
150 4th Avenue North, Suite 2000
Nashville, TN 37219-2498
(615) 244-1713 (telephone)
(615) 726-0573 (fax)
jkelley@nealharwell.com
smontgomery@nealharwell.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on counsel for the Defendant, David P. Cañas (Email: dpc@h3gm.com) of Harwell Howard Hyne Gabbert & Manner, P.C., 315 Deaderick Street, Suite 1800, Nashville, TN 37238, by filing the same with the Court's ECF electronic filing system on this the 27th day of February, 2009.

                                                                                    _/s/ James R. Kelley_____